UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STEVE I. MICHAELS<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:14-cv-00239-FVS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 14, 20.) Attorney Dana C. Madsen represents plaintiff; Special Assistant United States Attorney Franco L. Becia represents defendant. After reviewing the administrative record and briefs filed by the parties, the court GRANTS plaintiff's Motion for Summary Judgment and DENIES defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff Steve I. Michaels (plaintiff) protectively filed for supplemental security income (SSI) on June 14, 2011. (Tr. 179, 211.) Plaintiff alleged an onset date of October 17, 2000.[1] (Tr. 179.) Benefits were denied initially and on reconsideration. (Tr. 108, 115.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Marie Palachuk on December 5, 2012. (Tr. 37-80.) Plaintiff was not represented by counsel but testified at the hearing. (Tr. 50-68.) Medical expert Dr. Darius Ghazi, vocational expert Kimberly Mullinax, and plaintiff's sister Debra Harkins also testified. (Tr. 45-49, 69-78.) The ALJ denied benefits (Tr. 21-30) and the Appeals Council denied review. (Tr. 1.) The matter is before this court pursuant to 42 U.S.C. § 405(g).

---

[1] Under Title XVI, benefits are not payable before the date of application. 20 C.F.R.§§ 416.305, 416.330(a); S.S.R. 83-20.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was born on June 30, 1959 and was 53 years old at the time of the hearing. (Tr. 76.) He graduated from high school and attended some college. (Tr. 51.) He has a certificate for motorcycle repair. (Tr. 51.) He was in a work-related motor vehicle accident in 2000 and sustained a significant injury to his cervical spine. (Tr. 46.) At the time of the accident, he was working at freight loading and unloading for a beverage company. (Tr. 52.) He had an L&I claim and received permanent partial disability. He has other work experience sharpening saw blades. (Tr. 53-54.) Plaintiff testified he cannot work because his hands and feet tingle and go numb a lot. (Tr. 58.) This occurs two to three times per week, depending on what he is doing. (Tr. 59.) His hands bother him more than his feet. (Tr. 60.) He has problems with his low back. (Tr. 61.) If he exerts himself, his back might feel fine but two days later he cannot do anything. (Tr. 58.) Sometimes he cannot move. (Tr. 58.) He used to be a very active person. (Tr. 58.) He cannot have any pressure on his back. (Tr. 59.) His neck is sore every day and there is a constant grinding and popping. (Tr. 62-64.) Sometimes there is sharp pain when he pops it. (Tr. 63.) He cannot lift his head up at all. (Tr. 63.) Heat is the only thing that helps. (Tr. 64.) He had surgery on both shoulders. (Tr. 64.) Reaching above his head is difficult. (Tr. 64.) He has chronic headaches. (Tr. 66.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial

evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in

substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). If the Commissioner does not meet that burden, the claimant is found to be disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since June 14, 2011, the application date. (Tr. 23.) At step two, the ALJ found plaintiff has the following severe impairments: status post cervical compression fracture injury in 2000; status post acromioplasty left shoulder; and chronic headaches. (Tr. 23.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 24.) The ALJ then determined:

> [C]laimant has the physical residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he would be limited to occasional bilateral push or pull; could occasionally climb; bilateral reaching overhead would be limited to occasional; flexion, extension, and rotation of the neck could be no more than occasional, and he should avoid concentrated exposure to extreme cold, vibrations and hazards.

(Tr. 24-25.) At step four, the ALJ found plaintiff is unable to perform any past relevant work. (Tr. 29.) After considering plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ determine there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 29.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act since June 14, 2011, the date the application was filed. (Tr. 30.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ: (1) failed to adequately develop the record; (2) improperly discredited symptom testimony; (3) improperly rejected lay witness testimony; (4) failed to include all of plaintiff's limitations in the hypothetical to the vocational expert; and (5) failed to apply the grids to find plaintiff disabled. [2] (ECF No. 14 at 9-15.) Defendant argues:

---

[2] The court notes that plaintiff's Motion for Summary Judgment brief does not include a list of issues or identify which portions of the argument relate to which issue. In order to avoid inadvertent waiver of an issue, plaintiff's counsel's should ensure the initial memorandum complies with Federal Rule of Appellate Procedure governing briefs which requires an opening brief to provide, in addition to other elements, a statement of the issues presented for review and a summary of the argument, which must contain a succinct, clear, and accurate statement of the

(1) the evidence submitted to the AC does not support of finding of disabled; (2) the ALJ fully and fairly developed the record; (3) the credibility finding was properly supported; (4) the RFC was proper; and (5) the step five finding is supported by the record. (ECF No. 20 at 6-23.)

## DISCUSSION

### 1. Duty to Develop the Record

Plaintiff argues the ALJ erred by failing to develop the record. (ECF No. 14 at 11-12.) In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). When a claimant is not represented by counsel, this responsibility is heightened. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003). The regulations provide that the ALJ may attempt to obtain additional evidence when the evidence as a whole is insufficient to make a disability determination, or if after weighing the evidence the ALJ cannot make a disability determination. 20 C.F.R. § 404.1527(c)(3); *see also* 20 C.F.R. 404.1519a. An ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan*, 242 F.3d at 1150.

Plaintiff argues the ALJ's comment, "There are very few opinions in the record giving the claimant a residual functional capacity assessment," reflects a deficiency in the record. (ECF No. 14 at 12.) Plaintiff points out he submitted additional medical records to the Appeals Council, suggesting the ALJ could have reviewed those records had the ALJ further developed the record. (ECF No. 14 at 11.) Plaintiff asserts that if the medical expert had the opportunity to review the records later submitted to the Appeals Council "it is likely that Dr. Ghazi would have testified that Mr. Michaels was limited to sedentary work or less." (ECF No. 14 at 11.) Specifically, plaintiff points to a note from Dr. Norquist dated February 18, 1999 which released plaintiff to work with the restriction of no heavy or repetitive use of his right arm, a 10 pound lifting limit with the right arm, and no reaching or overhead use of the right arm. (Tr. 460.)

---

arguments made in the body of the brief, and which must not merely repeat the argument headings. Fed. Rules App. P. 28(a)(5) and (a)(7). "Judges are not like pigs, hunting for truffles buried in briefs." *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991).

Plaintiff argues his condition worsened after that date and he had additional injuries after that date, so "it is unlikely that he would ever regain the ability to perform greater than sedentary work since his condition deteriorated over time." (ECF No. 14 at 11.)

The problem with plaintiff's argument is twofold. First, plaintiff's right shoulder problem occurred well outside the relevant period which began June 14, 2011. (Tr. 41.) The evidence of plaintiff's shoulder problem, while not considered by the ALJ, is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012). However, to the extent the new evidence submitted to the Appeals Council is not relevant to the period at issue, it is not material to this review. 20 C.F.R. 404.970(b). Further, a statement of disability made outside the relevant time period may be disregarded. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). As a result, Dr. Norquist's statement of limitation more than two years before the relevant period is not particularly probative. Furthermore, all of the evidence submitted to the Appeals Council except one record covers the period from 1987 to 2005.[3]

The second problem with plaintiff's argument is the evidence does not support an ongoing right shoulder problem. While it is true that Dr. Norquist diagnosed plaintiff with a frozen right shoulder in January 1999 and opined that plaintiff was limited in the right arm in February 1999 (Tr. 459-60), the record is otherwise silent about complaints, difficulties, or limitations regarding plaintiff's right arm after that date.[4] After plaintiff's October 2000 automobile accident, he saw Dr. Norquist in November 2000 and January and February 2001 for problems with his left elbow and made no mention of any ongoing problem with his right

---

[3] Only one record submitted to the Appeals Council pertains to the relevant period. A record from podiatrist Dr. Brim dated July 23, 2012 indicates plaintiff was diagnosed with plantar fascia bilaterally and was treated with orthopedic strapping. (Tr. 439.) Plaintiff asserts in reply briefing that a May 14, 2012 nerve conduction study by Dr. Mackenzie is relevant. (ECF No. 23 at 2.) However, the record is actually dated May 14, 2002 and suggests no specific limitation greater than those already accounted for by the ALJ in the RFC.

[4] Plaintiff testified he had surgeries on both shoulders and they were "fixed." (Tr. 64.) However, there is only evidence in the record regarding left shoulder surgery. (Tr. 47.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

shoulder. (Tr. 461-63.) In March and April 2001, Dr. Norquist noted plaintiff had developed shoulder pain on the left "much like the pain that he had on the right shoulder," and, "He feels his symptoms are exactly as they were on the opposite side." (Tr. 464.) This suggests the right shoulder pain was in the past, particularly since plaintiff went on to have shoulder impingement surgery on his left shoulder in September 2001 with no mention of right shoulder pain or injury. (Tr. 485.) In September 2002, plaintiff saw Dr. Norquist for stiffness in his left hand and elbow with no mention of either shoulder. (Tr. 467.) In April 2005, Dr. Norquist noted ongoing signs of impingement related to the left shoulder. (Tr. 468.) This evidence is confirmed by the lack of right shoulder exam findings by occupational medicine specialist Dr. Rempel in May 2003 and March 2010. (Tr. 269, 496.) Furthermore, plaintiff points to no evidence from the period after June 2011 supporting any limitation of the right shoulder. Thus, the evidence submitted to the Appeals Council is not only from outside the relevant time period, it does not support the conclusion that there is any impairment or limitation the ALJ could or should have discovered by developing the record.

**2.    Credibility**

Plaintiff argues the ALJ improperly discredited his symptoms claims. (ECF No. 14 at 12.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties

concerning the nature, severity, and effect of claimant's condition.  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). A negative credibility finding must be supported by "specific, clear and convincing" reasons when there is no evidence of malingering. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

The first reason given by the ALJ for the negative credibility finding is the objective medical evidence does not support the level of limitation claimed. (Tr. 25.) The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 416.929(c)(2); *see also* S.S.R. 96-7p. Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins* at *id.*; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). After asserting the objective evidence does not support the limitation alleged, the ALJ summarized a number of medical records over more than two pages. (Tr. 25-28.)[5] However, the ALJ failed to discuss the medical evidence as it applies to plaintiff's credibility or analyze the evidence in any way. The only comment the ALJ made about the objective evidence is that "his testimony at the hearing did not always reflect what the medical evidence indicates." (Tr. 29.) It is not sufficient for the ALJ to make only general findings; the ALJ must state which testimony is not credible and what evidence suggests

---

[5] Pages 7 and 8 of the ALJ's decision were evidently transposed in preparing the transcript, so page 7 of the ALJ's decision is page 28 of the transcript and page 8 of the ALJ's decision is page 27 of the transcript. Thus, pages 6 and 7 of the ALJ's decision (pages 26 and 28 of the transcript) are summaries of the medical evidence, as are partial pages 5 and 8 (pages 25 and 27 of the transcript).

the complaints are not credible. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). An examiner's findings should be as comprehensive and analytical as feasible so that a reviewing court may know the basis for the decision. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). The ALJ failed to tie the evidence cited to the credibility determination; therefore, this reason is not specific, clear and convincing.

Defendant asserts the ALJ also cited plaintiff's daily activities as a reason supporting the credibility finding. (ECF No. 20 at 16-17.) Evidence about daily activities is properly considered in making a credibility determination. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, a claimant need not be utterly incapacitated in order to be eligible for benefits. *Id.* Many activities are not easily transferable to what may be the more grueling environment of the workplace, where it might not be possible to rest or take medication. *Id.* Yet daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ observed plaintiff plays pool, mows the lawn, and drives despite reporting limitations with his cervical motion. (Tr. 29.) However, plaintiff testified he can mow the lawn "and then I'm done for the rest of the day." (Tr. 64.) He testified he plays pool "the doctors like that because I bend my neck as much as I can, it keeps it somewhat mobile." (Tr. 64.) These both seem like reasonable qualifications to the activities mentioned by plaintiff, yet the ALJ did not address them or discuss their effect on the credibility finding. Plaintiff's cervical limitation was described by Dr. Ghazi as the ability to function with some limitations on severe bending, extending, or rotating his neck. (Tr. 48.) Neither playing pool nor mowing the lawn suggests significant rotation, bending, or extension of the neck. As a result, the ALJ's interpretation of the evidence is not well-supported.

The ALJ also pointed out plaintiff testified he could lift 10 to 15 pounds occasionally and could probably stand for two or three hours. (Tr. 29, 65.) However, the ALJ did not explain or specify how that is inconsistent with the record. The ALJ stated generally, "The claimant's physical impairments have reduced his capacity to work, but not to the extent that he is precluded entirely from basic work-related activity." (Tr. 29.) This does not meet the *Dodrill* requirement to explain what evidence suggests plaintiff's complaints are not credible. A general summary of the evidence is not an explanation or analysis of plaintiff's credibility. As a result,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

the "daily activity evidence" is insufficient to qualify as a specific, clear and convincing reason justifying the negative credibility finding.

Lastly, defendant asserts the ALJ also cited plaintiff's lack of treatment for a year between July 2010 and March 2011 as a reason for the credibility finding. (Tr. 27.) The ALJ is permitted to consider the claimant's lack of treatment in making a credibility determination. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). First, it is a stretch to identify this as a reason for the credibility finding, since the ALJ's only comment about this "reason" is buried in the summary of evidence and states, "Additionally, [Dr. Ghazi's] opinion is consistent with the lack of treatment for the year between July 2010 and March 2011 as well as the treating rehabilitation doctor opinion. . . ." (Tr. 27.) Second, the statement is inaccurate, since the period between July 2010 and March 2011 is eight months rather than a year. Third, the statement is inaccurate because plaintiff saw PA-C Cantu twice in August 2010. (Tr. 311, 314.) Fourth, the evidence relied on by the ALJ is evidence outside the relevant period. It is unreasonable of the ALJ to assert on one hand that evidence before the application date is not relevant (Tr. 41), then to use that evidence to support negative findings. Thus, this is not a clear and convincing reason supported by substantial evidence supporting the negative credibility finding.

The credibility finding lacks specificity and is neither clear nor convincing. Some reasons cited by the ALJ are not supported by substantial evidence. As a result, the credibility finding is based on error.

**3.    Lay Witness**

Plaintiff argues the ALJ improperly rejected the testimony of the lay witness, Debra Harkins, who is plaintiff's sister. (ECF No. 14 at 13.) An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Commissioner of Social Security*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ. If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir, 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). The ALJ noted Ms. Harkin's testimony but gave it little weight because "it is apparent that she has a pecuniary interest in the claimant's ability to receive benefits." (Tr. 27.)

Ms. Harkins testified that plaintiff has lived with her off and on for the last 12 or 13 years. (Tr. 69.)She testified that in the two years preceding the hearing, his problems became more severe. (Tr. 70.) She indicated he sometimes spends two or three days in his room, barely moving and that he is not very active at all. (Tr. 70.) She also reported that plaintiff does not have a good appetite and experiences migraines. Plaintiff argues that the outcome of the case would be different if Ms. Harkins' testimony had been properly considered. Defendant failed to address this issue in briefing; as a result, the issue is waived. *Bray v. Comm'r*, 554 F.3d 1219, 1226 n. 7 (9th Cir. 2009) (argument not made in opening brief waived).

Notwithstanding, the ALJ erred with respect to Ms. Harkins' testimony. The ALJ pointed out Ms. Harkins stated she has supported her brother for many years "and they do not know if they can continue to support him as he had lost his state medical the month before." (Tr. 27.) This is not an accurate restatement of Ms. Harkins' testimony: "We have supported him for many years. My husband and I. And you know I don't know what's in the future. We just go day-by-day." (Tr. 72.) When the ALJ asked if plaintiff had lost state medical, Ms. Harkins indicated, "That does concern me because of the medications he takes." Other than indicating that she and her husband had supported plaintiff for many years, Ms. Harkins did not mention finances or indicate that she did not know whether she could continue to support him.

A lay witnesses may not be dismissed out of hand because they are inclined to be partial to the claimant. The ALJ must point out "evidence that a specific [witness] exaggerated a claimant's symptoms in order to get access to his disability benefits." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir.2009); see also *Ratto v. Sec'y, Dept. of Health & Human Servs.*, 839 F.Supp. 1415, 1428-29 (D.Or.1993) ("By definition, every claimant who applies for [disability] benefits does so with the knowledge-and intent-of pecuniary gain. That is the very purpose of applying for [disability] benefits.... If the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant (or their spouse, or friends, or family) would ever be found credible."). Here, the ALJ did not point to substantial evidence suggesting exaggeration or a pecuniary interest in the outcome of plaintiff's disability claim. As a result, the reason cited by the ALJ for rejecting Ms. Harkins' testimony is not supported by substantial evidence and is based on error.

**4.     Hypothetical to Vocational Expert**

Plaintiff argues the hypothetical to the vocational expert did not contain all of the limitations identified by Dr. Ghazi. (ECF no. 14 at 15.) The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations. *Osenbrook v. Apfel*, 240 F.3D 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The ALJ is not bound to accept as trued the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Osenbrook*, 240 F.3d at 1164; *Magallenes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence. *Magallenes*, 881 F.2d at *id.*

The ALJ gave significant weight to Dr. Ghazi's opinion. (Tr. 27.) Plaintiff asserts Dr. Ghazi testified he could not reach directly overhead "at all." (ECF No. 14 at 15, *citing* Tr. 48.) Dr. Ghazi actually testified, "He may have some limitation extending his arm overhead, and not being able to reach overhead on a continuous basis. He can do it occasionally, but not directly overhead, and that would require tilting his neck backwards. So, those motions are both limited." (Tr. 48.) The hypothetical to the vocational expert contained a reaching limitation: "Reaching overhead bilaterally is limited to occasional. The individual needs to avoid flexion, extension or rotation of the neck on more than an occasional basis." (Tr. 75.) After considering the entire hypothetical including the reaching limitation, the vocational expert concluded an individual with those limitations would be able to work. (Tr. 75.) However, neither the RFC nor the hypothetical included a limitation on direct overhead reaching.

Defendant's brief addresses the RFC and hypothetical generally but does not discuss the specific error alleged by plaintiff with regard to Dr. Ghazi's testimony that plaintiff can reach overhead occasionally "but not directly overhead." (Tr. 48, ECF No. 20 at 18-20.) The ALJ's decision does not address direct overhead reaching or explain why a limitation on direct overhead reaching was not included in the RFC and hypothetical. It is not clear from the record whether an additional limitation of "no direct overhead reaching" would affect the testimony of the vocational expert. As a result, on remand, the ALJ should distinguish occasional overhead reaching and direct overhead reaching and obtain additional testimony from the vocational expert if necessary.

Case 2:14-cv-00239-FVS    Document 24    Filed 06/17/15

1  Plaintiff also argues the ALJ should have applied the grids to find plaintiff disabled.
2  (ECF No. 14 at 15.) The grids are an administrative tool the Commissioner may rely on when
3  considering claimants with substantially uniform levels of impairment. *Burkhart v. Bowen,* 856
4  F.2d 1335, 1340 (9th Cir. 1988); 20 C.F.R.§ 404, Subpt P, App. 2. Because of the ALJ's errors in
   considering the testimony of plaintiff, his sister, and the medical expert, the RFC is in question.
5  As a result, reliance on the grids would be premature. On remand, the ALJ may consider the
6  grids if appropriate based on findings supported by substantial evidence.
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

## CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of legal error. The matter must be remanded for reconsideration of the credibility finding and lay witness testimony. The testimony of the medical expert and vocational expert must also be reconsidered. On remand, the ALJ should provide legally sufficient reasons for rejecting any testimony and should ensure all credited limitations are accounted for in the RFC and hypothetical to the vocational expert. The ALJ may take additional testimony as is appropriate.

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(ECF No. 14)** is **GRANTED.** The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2. Defendant's Motion for Summary Judgment **(ECF No. 20)** is **DENIED**.

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

DATED June 17, 2015

     _s/Fred Van Sickle_
     Fred Van Sickle
     Senior United States District Judge